UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION (DETROIT)

| | |
|---|---|
| In re: | Chapter 7 |
| Romeo Montessori School Association, Inc., | Case No. 09-63398 |
| Debtor. / | Hon. Phillip J. Shefferly |
| Stuart A. Gold, Trustee, | Adversary Proceeding No. 10-04884-PJS |
| Plaintiff, | |
| v. | |
| Consolidated Insurance Company, | |
| Defendant. / | |

**OPINION GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**Introduction**

The plaintiff in this adversary proceeding is the Chapter 7 trustee. The trustee filed this adversary proceeding seeking a declaratory judgment that the defendant insurance company is required to provide coverage for certain claims asserted against the Chapter 7 debtor. The defendant filed a motion for summary judgment based upon its contention that the insurance policy at issue does not provide coverage for the claims identified by the trustee. For the reasons explained in this opinion, the Court grants the defendant's motion for summary judgment.

## Jurisdiction

This is a non-core proceeding related to a bankruptcy case over which the Court has jurisdiction under 28 U.S.C. §§ 1334(b) and 157(c)(1). The parties consent to have the Bankruptcy Court enter orders and judgment under 28 U.S.C. § 157(c)(2) and Local District Rule 83.50(a)(3)(A) (E.D. Mich.).

## Facts

The following facts are not in dispute. Romeo Montessori School Association, Inc. ("Debtor") is a corporation that operated a preschool through elementary private educational facility. On July 28, 2009, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The Debtor ceased operating the educational facility at that time. Stuart A. Gold ("Trustee") was appointed as the Chapter 7 trustee. After the case was filed, many of the parents and families (collectively referred to as "Parents") whose children attended the school filed proofs of claims with the Bankruptcy Court indicating that they held claims against the Debtor because they had prepaid tuition or for other educational services for the 2009-2010 school year. Although other proofs of claims have also been filed by other creditors in this bankruptcy case, a review of the claims register in the Debtor's case indicates a total of 48 proofs of claims filed by Parents who prepaid tuition or other payments for the 2009-2010 school year in an aggregate amount of $178,458.69.

After his appointment, the Trustee discovered in the Debtor's books and records various insurance policies issued by the defendant, Consolidated Insurance Company ("Consolidated"). One of the policies issued by Consolidated provided "school leaders errors and omissions liability and employee benefits liability coverage" for the period beginning October 1, 2008 and ending October 1, 2009 ("School Leaders Policy"). After reviewing the Parents' proofs of claims and the

terms of the School Leaders Policy, the Trustee demanded in writing that Consolidated provide coverage under the School Leaders Policy for the claims filed by the Parents. On November 30, 2009, Consolidated wrote to the Trustee to inform him that it did not believe that the School Leaders Policy provided coverage for the claims identified by the Trustee based upon the proofs of claims filed by the Parents in the Debtor's bankruptcy case. The letter explained specific reasons why Consolidated denied that there was coverage for those claims under the School Leaders Policy, but also stated that by identifying specific reasons why there was no coverage, Consolidated was not waiving its right to raise other insurance policy language or other issues in determining coverage, and expressly reserved for Consolidated the right to raise additional policy language and issues.

On March 15, 2010, the Trustee filed this adversary proceeding against Consolidated. The complaint contains one count, and alleges that Consolidated breached the terms of the School Leaders Policy by failing and refusing to provide coverage for the loss of the prepaid tuition and other amounts set forth in the proofs of claims filed by the Parents. On April 29, 2010, Consolidated filed an answer and affirmative defenses. On May 19, 2010, Consolidated filed amended affirmative defenses. In addition to the reasons set forth in its November 30, 2009 letter denying coverage, Consolidated set forth in its affirmative defenses a number of other reasons why it does not believe that the Parents' claims are entitled to coverage under the School Leaders Policy.

On December 28, 2010, Consolidated moved for summary judgment (docket entry no. 20). The motion is based on one specific defense. The motion alleges that the Parents' claims are in substance breach of contract claims and, therefore, are within an exclusion to coverage set forth in section I, C.7. of the School Leaders Policy. That provision of the School Leaders Policy excludes from coverage "any 'claim' alleging breach of contract." The Trustee makes two arguments in

-3-

10-04884-pjs    Doc 26    Filed 04/19/11    Entered 04/19/11 17:28:32    Page 3 of 16

response. First, the Trustee argues that Consolidated has either waived, or is estopped from relying on, the contractual liability exclusion in the School Leaders Policy because Consolidated failed to raise that exclusion in its November 30, 2009 letter that denied the Trustee's demand for coverage. Second, the Trustee argues that even if Consolidated has not waived and is not estopped from relying on the contractual liability exclusion, Consolidated is still not entitled to summary judgment because the Parents' proofs of claims do not expressly allege breach of contract but may be based upon theories of liability other than breach of contract. Therefore, the Trustee argues, the contractual liability exclusion contained in the School Leaders Policy does not apply. On April 4, 2011, the Court heard Consolidated's motion for summary judgment and, at the conclusion of the hearing, took the motion under advisement.

## **Standard for Summary Judgment Under Rule 56(c)**

Fed. R. Civ. P. 56 for summary judgment is incorporated into Fed. R. Bankr. P. 7056. Summary judgment is only appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-48. A "genuine" issue is present "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Berryman v. Rieger, 150 F.3d 561, 566 (6th Cir. 1998) (quoting Anderson, 477 U.S. at 248).

"The initial burden is on the moving party to demonstrate that an essential element of the non-moving party's case is lacking." Kalamazoo River Study Group v. Rockwell International Corp., 171 F.3d 1065, 1068 (6th Cir. 1999) (citation omitted). "The burden then shifts to the non-

-4-

moving party to come forward with specific facts, supported by evidence in the record, upon which a reasonable jury could return a verdict for the non-moving party." Id. (citing Anderson, 477 U.S. at 248). "The non-moving party, however, must provide more than mere allegations or denials . . . without giving any significant probative evidence to support" its position. Berryman v. Rieger, 150 F.3d at 566 (citing Anderson, 477 U.S. at 256).

## Applicable Law

Insurance contracts are interpreted by reference to state substantive law. Policy provisions often identify the state from which governing law derives. The School Leaders Policy contains no such provision. Nevertheless, Consolidated points out that Michigan law should govern, and the Trustee apparently agrees by relying upon the state's case law and statutes to argue his case. Therefore, the School Leaders Policy shall be interpreted in accordance with Michigan law. See Irons Home Builders, Inc. v. Auto-Owners Ins. Co., 839 F. Supp. 1260, 1264 (E.D. Mich. 1993) ("In cases involving the construction of an insurance contract, Michigan law requires the court to apply the law of the state where the insurance policy was issued.").

## Has Consolidated Waived or is it Estopped From Relying on the Contractual Liability Exclusion in the School Leaders Policy?

Generally, in Michigan, "once an insurance company has denied coverage to an insured and stated its defenses," the insurance company may be found to have waived or be estopped from raising new reasons to deny liability. Kirschner v. Process Design Assocs., Inc., 592 N.W.2d 707, 709 (Mich. 1999) (citations omitted); see also Mich. Comp. Laws Ann. § 500.2122(1) (2011) ("An insurer or agent, upon making a declination of insurance, shall inform the applicant of each specific reason for the declination."). However, application of the doctrines of waiver and estoppel is limited in Michigan, and ordinarily "the doctrines will not be applied to broaden the coverage of a policy

-5-

to protect an insured against risks that were not included in the policy or that were expressly excluded from the policy." Kirschner v. Process Design, 592 N.W.2d at 709-10 (citations omitted).

In Lee v. Evergreen Regency Co-Op Management Systems, Inc., 390 N.W.2d 183, 186 (Mich. Ct. App. 1986), the Michigan Court of Appeals identified two exceptions to the rule that coverage cannot be created by application of the doctrines of waiver and estoppel. The first exception is where an insurer has denied coverage and declined to defend an insured in underlying litigation. The second exception is where equity favors making an insurer provide coverage because the insurer misrepresented the terms of the policy to the insured, or defended the insured without a reservation of rights. The two exceptions noted in Lee v. Evergreen Regency Co-Op were subsequently recognized by the Michigan Supreme Court in Kirschner v. Process Design, 592 N.W.2d at 709-10. Michigan law is well settled that except in these two limited circumstances, the doctrines of waiver and estoppel may not be applied to extend the scope of a policy to protect an insured against a risk that was not provided for in the policy, or to force an insurance company to pay a loss for which it charged no premium.

The Trustee does not contend that either of the exceptions articulated in Lee v. Evergreen Regency Co-Op and Kirschner v. Process Design is applicable in this case. Therefore, the fact that Consolidated did not identify the contractual liability exclusion when it denied the Trustee's demand for coverage in its November 30, 2009 letter does not mean that the Trustee can now prevail on its complaint if coverage is not otherwise provided by the School Leaders Policy. In short, under Michigan law, Consolidated's failure to identify the contractual liability exclusion in the November 30, 2009 letter is not fatal to Consolidated's defense to the Trustee's complaint, and

Consolidated has neither waived nor is it now estopped from raising the contractual exclusion defense.

There are additional reasons why the doctrines of waiver and estoppel are not applicable in this case. First, Consolidated's November 30, 2009 letter plainly stated that

> [b]y raising any policy provisions or issue [sic] in this letter Consolidated Insurance Company is not waiving the right to raise other policy language or issues in determining coverage. Consolidated Insurance Company expressly reserves the right to raise additional policy language and issues.

Although it may have been preferable for Consolidated to identify each and every defense to the Trustee's demand in its November 30, 2009 letter, it is clear that Consolidated expressly reserved the right to raise additional defenses not specifically identified in the letter. That express reservation independently compels the Court to reject the Trustee's arguments for application of the doctrines of waiver and estoppel.

Finally, Consolidated did expressly raise the contractual liability exclusion as a defense in its answer and affirmative defenses that it filed in this adversary proceeding on April 29, 2010. Consolidated raised this defense in its first responsive pleading in this adversary proceeding, nearly a year ago. There was no unreasonable delay in asserting the defense in this adversary proceeding, and there certainly is no evidence that the Trustee has suffered any prejudice by reason of the fact that Consolidated did not specifically identify the contractual liability exclusion defense in its November 30, 2009 letter. In sum, the Court rejects the Trustee's arguments that Consolidated has either waived or is now estopped from asserting the contractual liability exclusion contained in the School Leaders Policy.

### Are the Parents' Claims Against the Debtor Within the Contractual Liability Exclusion of the School Leaders Policy?

Section I, A.1. of the School Leaders Policy is titled "Coverage." It provides that Consolidated "will pay those sums that the insured becomes legally obligated to pay because of 'loss' arising from a 'wrongful act' to which this insurance applies." Section I, C. of the School Leaders Policy is titled "Exclusions." It lists a number of specific exclusions to insurance coverage under the School Leaders Policy, including an exclusion in paragraph 7. titled "Contractual Liability." Section I, C.7. provides that "[t]his insurance does not apply to . . . [a]ny 'claim' alleging breach of contract." Consolidated asserts that this exclusion applies to any loss that the Debtor may suffer in having to pay the Parents' proofs of claim.

Consolidated argues that a review of the Parents' proofs of claims reveals that all of those claims in substance allege a breach of contract. According to Consolidated, the Parents prepaid tuition and other payments in exchange for the Debtor's agreement to provide educational services to their children. For support, Consolidated points to the documents that are attached to some of the Parents' claims. First, Consolidated identifies an Enrollment Agreement pursuant to which the Debtor agreed to provide educational and child-care services in exchange for payment (Exhibit D to Consolidated's motion). Second, Consolidated identifies a Child Placement Contract (Exhibit E to Consolidated's motion). Third, Consolidated identifies a School Summer Camp Registration Form (Exhibit F to Consolidated's motion). Consolidated argues that these documents are, on their face, contracts, because they memorialize an agreement of the Debtor to provide educational and child-care related services in exchange for payment of tuition by the Parents of the children enrolled in the educational facility. Therefore, these documents constitute contracts within the common, everyday meaning of the term "contract." Because the Parents' claims filed in the bankruptcy case

are all based upon the Parents prepaying tuition or other payments to the Debtor, Consolidated concludes that the claims of the Parents are necessarily claims for breach of contract, arising as a result of the Debtor's failure to provide the agreed upon educational services when it closed its business and filed bankruptcy on July 28, 2009.

Although there are two express exceptions to the contractual liability exclusion in the School Leaders Policy, the Trustee does not argue that the Parents' claims for which the Trustee seeks coverage are within either of these two express exceptions. Also, the Trustee does not dispute that the Enrollment Agreement, Child Placement Contract, and School Summer Camp Registration Form are themselves contracts. Nor does the Trustee dispute that the Debtor's failure to provide educational services after receiving the prepaid tuition is a breach of contract. Instead, the Trustee argues that the Parents' proofs of claims filed in the bankruptcy case for the tuition and other amounts that they prepaid to the Debtor do not constitute a "claim alleging breach of contract."

The Trustee focuses on the specific language in the School Leaders Policy that sets forth the contractual liability exclusion. Section I, C.7. of the School Leaders Policy describes the contractual liability exclusion as "[a]ny 'claim' alleging breach of contract." The Trustee then makes two basic points in arguing that there is a genuine issue of material fact. First, even though the Trustee does not deny that the Parents that filed these proofs of claims had entered into contracts with the Debtor to provide educational services to their children in exchange for payment, nowhere do the Parents' proofs of claims explicitly say "breach of contract," which the Trustee argues is required by the contractual liability exclusion. Second, the Trustee posits that it is "possible" that the Parents' claims against the Debtor could also conceivably be grounded in a tort theory, such as conversion or breach of fiduciary duty, or a quasi-contractual theory such as unjust enrichment. Because these

possible, albeit unarticulated, alternate theories of recovery *may* exist in favor of the Parents, even though they have not been explicitly stated by the Parents, the Trustee asserts that the Parents' claims are not within the contractual liability exclusion in the School Leaders Policy. To support his two arguments, the Trustee relies upon the Parents' proofs of claims and upon his own affidavit.

Although the Trustee does not list in his complaint the specific claims that he considers to be the "Parents' claims," and for which he is demanding coverage, the Trustee attached copies of the first page of 48 proofs of claims to the Trustee's brief in opposition to Consolidated's motion for summary judgment. As noted earlier, the claims register in the Debtor's bankruptcy case reveals a total of 48 claims filed by Parents who describe the basis for their claims, in one way or another, as tuition that they paid to the Debtor for the 2009-2010 school year or for other educational services during that school year. To consider the Trustee's argument that the Parents' claims do not allege breach of contract, the Court examined each of these proofs of claims. They are very similar to one another. For example, in proof of claim no. 1-1 filed by Kristy Slanec, the basis for claim is described as "monies provided in advance for school term 2009-2010 and camp." There are no documents attached to that proof of claim. Proof of claim no. 2-1 filed by Joe and Ban Dindo describes the basis of their claim as "tuition paid for 2009-2010 school year." There are documents attached to that proof of claim, including documents on the Debtor's letterhead describing the required amounts and payments for tuition for the 2009-2010 school year. Proof of claim no. 3-1 filed by Oscar and Alma Catarino describes the basis for claim as "2009-2010 tuition and summer camp," and attaches a copy of an "Enrollment Agreement 2009-2010" on the Debtor's letterhead that explains the amounts and dates of the payments required for enrollment of a child in the Debtor's educational facility. Proof of claim no. 5-1 filed by Kim and Chuck Rummier describes

the basis for claim as "Deposit + pre-payment for 2009-2010 school year tuition." This proof of claim also has attached to it an agreement between the Parents and the Debtor with respect to the amounts and timing of the payments required for tuition, as well as other documents. The Court has reviewed all 48 of the Parents' proofs of claims. They do not all use the same precise verbiage in describing the basis for their claims, but it can fairly be said that all of the Parents' proofs of claims are based on the fact that the Parents paid the Debtor tuition or for other educational services for the 2009-2010 school year that the Debtor failed to provide to the Parents' children once the Debtor closed the school.

Even though the Parents' proofs of claims themselves may not contain the specific words "breach of contract," it is obvious to the Court that the claims are squarely grounded in a breach of contract theory. The Parents claim that they prepaid tuition and other payments in exchange for the educational services for their children. They did not receive the bargained for educational services because the Debtor closed the school. While the Parents' proofs of claims may not expressly use the words "breach of contract," and do not separately identify every possible legal theory of recovery in the same way that a complaint might, it is sophistry to argue that the Parents' proofs of claims do not allege a breach of contract by the Debtor. A review of the proofs of claims, with the asserted basis in all of them being prepaid tuition and other payments for educational services that they did not receive, demonstrates that, in substance, these proofs of claims do allege breach of contract. Therefore, the Court finds that they fall within the exception to coverage under section I.C.7. of the policy as "'claim[s]' alleging breach of contract."

The Trustee's second argument is that because the Parents may conceivably have other theories of recovery in addition to a breach of contract theory, the fact that the claims are found to

-11-

be within the breach of contract exclusion set forth in the School Leaders Policy does not end the Court's inquiry. In other words, even if the Parents' claims do allege breach of contract, summary judgment is not appropriate because there *may* be other non-contractual theories of recovery that the Parents may be able to assert, for which there is no exclusion in coverage. The Trustee correctly points out that unlike a complaint filed in a lawsuit, a proof of claim filed in a bankruptcy case is not required to describe specific theories of liability. Instead, official bankruptcy form B10 requires only that the claimant set forth in paragraph 2 of the official form the "basis for claim."[1]

In support of this second argument, the Trustee relies primarily on <u>Northland Insurance Co. v. Stewart Title Guaranty Co.</u>, 327 F.3d 448 (6th Cir. 2003). Applying Michigan insurance law, the Sixth Circuit Court of Appeals did not stop its analysis in that case when it found that a breach of contract claim was excluded from the insurance policy at issue in that case. Instead, because the underlying complaint also alleged multiple tort claims such as conversion, embezzlement, and breach of fiduciary duty, the court examined each of those theories to determine whether coverage extended to the insured. The Trustee argues that summary judgment is premature in this case because similar theories of recovery may possibly be alleged by the Parents in this case.

---

[1] Consolidated misconstrues the Trustee's second argument as somehow being based upon a theory of dual or concurrent causation, where multiple acts or events are the proximate cause of an injury. As a result, Consolidated's reply to the Trustee's brief in opposition to Consolidated's motion for summary judgment extensively discusses case law dealing with dual or concurrent causation. That case law is irrelevant to Consolidated's motion for summary judgment since the Trustee does not argue that there may be more than one act or event that is the cause of the Parents' loss. Instead, the Trustee argues that there may be other legal theories of recovery, in addition to breach of contract, that the Parents might be able to assert against the Debtor that are based upon the same acts and events that give rise to the breach of contract: the advance payments for tuition and for other educational services that the Debtor failed to deliver.

-12-

There are two problems with the Trustee's position. First, the Northland Insurance case is easily distinguishable. It addressed the extent of coverage for purposes of considering the insurer's duty to defend. 327 F.3d at 455-58. The duty to defend is independent of and much broader than the duty to indemnify. Dochod v. Central Mutual Ins. Co., 264 N.W.2d 122, 123 (Mich. Ct. App. 1978) (citing City Poultry & Egg Co. v. Hawkeye Casualty Co., 298 N.W. 114 (Mich. 1941)). "[T]he insurer must defend a lawsuit even if there are theories of liability that the policy does not cover, so long as there are theories of recovery that fall within the policy's scope." Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 102 (6th Cir. 1995) (citing Dochod v. Central Mutual, 264 N.W.2d at 123). An "insurer has a clear duty to defend the state court action suit until all possible theories of recovery which could be covered by the policy are eliminated." Northland Insurance, 327 F.3d at 457 (citations omitted). "When considering whether the insurer has a duty to defend the insured, it must be remembered that the duty to pay is severable from the duty to defend. The one is not dependent on the other." Dochod v. Central Mutual, 264 N.W.2d at 123 (citing Zurich Ins. Co. v. Rombough, 180 N.W.3d 775 (Mich. 1979)). "That an insurer may ultimately be found not liable, therefore, is a matter separate and apart from its obligation to defend the insured." Id.

In the case before the Court, unlike Northland Insurance, the Trustee's complaint only asks for a declaration that Consolidated is required to provide coverage for the claims asserted by the Parents, not that Consolidated has a duty to defend those claims. In addition, the Trustee acknowledges that the Debtor is liable to the Parents for the pre-paid tuition. So not only is there no request to defend, but there is no question as to the liability of the insured. Accordingly, this Court need not undertake the close examination conducted by the court in Northland Insurance, in

-13-

combing through the underlying complaint, in this case the Parents' proofs of claims, for any facts on which any possible theory of recovery might be based.

Second, as the nonmoving party responding to a motion for summary judgment, the Trustee "must present affirmative evidence to defeat a properly supported motion for summary judgment." Cox v. Kentucky Dept. of Transportation, 53 F.3d 146, 150 (6th Cir. 1995) (citations omitted). The Trustee "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. (quotation marks and citation omitted). As noted, in response to Consolidated's motion for summary judgment, the Trustee provided only his own affidavit.

The Trustee's affidavit swears to certain uncontested facts, such as the existence of policies; that the Parents pre-paid for tuition; that the school closed prior to the beginning of the school year; that the Parents's claims exceed $160,000; and that the Trustee made a demand on Consolidated to provide coverage, which Consolidated denied. In addition, the Trustee's affidavit states, in conclusory terms, that the funds paid by the Parents "were to be held by the Debtor for the purpose of providing educational services during the 2009-2010 school year." The Trustee's affidavit goes on to state that "on information and belief . . . the Debtor utilized [the funds] for purposes other than providing educational services . . . and therefore those funds are not available for refunding to the Parents." Most of the Trustee's affidavit simply parrots allegations from the complaint.

The Trustee's affidavit does not contain any probative evidence to support any alternate theories of recovery for the Parents. The Trustee supplied no affidavits from the Parents providing any explanation for the basis of their claims. Nor did the Trustee provide any affidavits from anyone else. The Trustee's affidavit does not state any factual basis either for the Trustee's assertion that the funds were "to be held by the Debtor" for a specific purpose, or for his "belief" that the funds

10-04884-pjs    Doc 26    Filed 04/19/11    Entered 04/19/11 17:28:32    Page 14 of 16

were not used for that purpose. Although speculating that the Parents might be able to assert some theory of recovery against the Debtor other than breach of contract, the Trustee's response to Consolidated's motion for summary judgment does not point to a single fact in the record that supports an alternative theory of recovery. The Trustee does not identify a single document or a single witness who could provide any evidence to support some alternative theory of recovery against the Debtor. The Trustee merely tosses out names of other types of causes of action such as conversion and breach of fiduciary duty, but offers no affidavits, documents or facts of any kind to support any of those causes of action or to make them anything more than unsupported metaphysical possibilities. Discovery in this adversary proceeding has closed. Summary judgment is the time "to put up or shut up." Cox v. Kentucky Dept. of Transp., 53 F.3d at 149. The Trustee cannot oppose Consolidated's motion for summary judgment with bare allegations and speculation about other factual possibilities. In sum, the Trustee has not come forward with any probative evidence to support the Trustee's assertion that the Parents may hold claims other than or in addition to their breach of contract claims.

## **Conclusion**

Where the issue is one of insurance coverage and not one of a duty to defend, Consolidated is correct that one exclusion from the obligation to pay for a loss under the policy ends the inquiry. Although "[e]xclusionary clauses in insurance policies are strictly construed in favor of the insured[,] . . . coverage under a policy is lost if any exclusion within the policy applies to an insured's particular claim." Auto-Owners Ins. Co. v. Churchman, 489 N.W.2d 431, 434 (Mich. 1992) (citation omitted); see also Hayley v. Allstate Ins. Co., 686 N.W.2d 273, 275 (Mich. Ct. App. 2004) (finding that coverage requiring an insurer to pay a claim "is lost if any exclusion in the policy

applies to an insured's particular claims . . . because an insurance company cannot be liable for a risk it did not assume") (quotation marks and citation omitted).  The School Leaders Policy in this case covers a loss arising from a wrongful act to which the insurance applies.  But the insurance policy expressly excludes coverage for a claim alleging a breach of contract.

The Court holds that the Parents' proofs of claims upon which the Trustee bases his complaint for declaratory relief against Consolidated do allege breach of contract by the Debtor. It is irrelevant that they do not contain the label "breach of contract" since the substance of the claims is clearly based upon breach of contract.  The Parents' claims against the Debtor, identified in the Trustee's complaint for declaratory relief against Consolidated, are all within the contractual liability exclusion set forth in section I.C.7. of the School Leaders Policy.  The Trustee's bare speculation that there may be facts to support other theories of recovery that could also form a basis for the Parents' claims against the Debtor is not only unsupported, but is irrelevant.  The section I.C.7. exclusion is dispositive.  <u>Auto-Owners Insurance v. Churchman</u>, 489 N.W.2d at 434. The Court finds that there are no genuine issues of material fact, and that Consolidated is entitled to summary judgment as a matter of law.  The Court will enter an order consistent with this opinion.

.

**Signed on April 19, 2011**

                                           **/s/ Phillip J. Shefferly**
                                       **Phillip J. Shefferly**
                                       **United States Bankruptcy Judge**